Hearing:
June 14, 2005

This Opinion is
Citable as Precedent
of the TTAB

Mailed:
December 16, 2005

**UNITED STATES PATENT AND TRADEMARK OFFICE**

————

**Trademark Trial and Appeal Board**

————

In re Reed Elsevier Properties Inc.

————

Serial No. 75530795

————

Katherine M. DuBray, Tara M. Vold, and J. Paul Williamson of Fulbright & Jaworski L.L.P. for Reed Elsevier Properties, Inc.

Kathleen M. Vanston, Trademark Examining Attorney, Law Office 103 (Michael Hamilton, Managing Attorney).

————

Before Grendel, Rogers and Drost,
Administrative Trademark Judges.

Opinion by Rogers, Administrative Trademark Judge:

Reed Elsevier Properties Inc. [applicant] initially applied to register LAWYERS.COM, in standard character form, as a mark for services identified as "providing access to an online interactive database featuring information exchange in the fields of law, lawyers, legal news and legal services," in Class 42. The application sought registration on the Principal Register and was based

on applicant's claim of use of the designation in commerce, with July 30, 1998 asserted as the date of first use and first use in commerce.

*Examination History/Evidence*

The examining attorney refused registration, asserting that the designation is merely descriptive for the identified services, because it signifies only that applicant provides information about lawyers via the Internet.[1]  See Lanham Act Section 2(e)(1), § 15 U.S.C. 1052(e)(1).  In addition, the examining attorney provided applicant with information about a prior-filed application which, the examining attorney reported, might present a bar to registration of LAWYERS.COM if the prior-filed application resulted in issuance of a registration.  In a subsequent action, however, the examining attorney stated that no such refusal would be issued.

In response to the initial refusal under Section 2(e)(1), applicant refused to concede that either LAWYERS or .COM is descriptive of its services and further argued that the combination LAWYERS.COM, "considered as a whole … does not immediately convey an idea of the ingredients,

---

[1] As an alternative basis for refusal under Section 2(e)(1), the examining attorney stated that the designation might be deceptively misdescriptive.  That refusal, however, was subsequently withdrawn and is not a subject of this appeal.

2

qualities and characteristics of these identified services." Applicant explained that information "about lawyers is not necessarily the whole or even the primary emphasis of Applicant's service," and that the composite designation "is vague, at best, in terms of conveying any specific information."

Notwithstanding applicant's argument, the examining attorney made the refusal under Section 2(e)(1) final. Applicant then amended its application to seek registration on the Principal Register under Section 2(f) of the Lanham Act, 15 U.S.C. §1052(f), but specifically stated that it was not waiving its right to argue the Section 2(e)(1) refusal on appeal. The examining attorney maintained the refusal under Section 2(e)(1) and rejected applicant's evidence of acquired distinctiveness as insufficient, but offered to consider any further evidence of distinctiveness applicant might later submit.[2]

Applicant then submitted a declaration from Carol Cooper, the Publisher and Senior Vice President of Martindale-Hubbell, a division of Reed Elsevier Inc., which is licensed to use LAWYERS.COM by applicant. This

---

[2] Applicant had submitted the declaration of its president and results of certain searches of the Internet by its counsel. The examining attorney suggested applicant submit information about the type of and expenditures for advertising, samples of

declaration provides specific figures regarding advertising and sales, among other statements, and reports that "Nielsen has conducted an independent survey chronicling the consumer use of the mark." The declarant asserted that relevant portions of the survey were attached to the declaration, but they do not appear in the record.

Without mentioning the apparently missing survey evidence, the examining attorney issued another office action maintaining the refusal of registration under Section 2(e)(1). The examining attorney asserted that LAWYERS.COM is generic for the identified services and that applicant's evidence of acquired distinctiveness was therefore insufficient to overcome the refusal.

Applicant then amended the application to seek registration on the Supplemental Register. Applicant also amended the description of services to delete the word "lawyers," so that the resulting identification was "providing access to an online interactive database featuring information exchange in the fields of law, legal news, and legal services." (In a subsequent examiner's amendment, the words "access to" also were deleted from the identification.) Applicant explained that its amendment of

---

advertising, the level of sales of applicant's services, and consumer or other statements of recognition.

the application to seek registration on the Supplemental Register was made "[w]ithout waiving its right to argue" on appeal against the examining attorney's refusal that LAWYERS.COM is descriptive.

The examining attorney refused registration on the Supplemental Register, referencing arguments and evidence from the previous office action. In addition, the examining attorney asserted that applicant's deletion of the word "lawyers" from its identification of services was a "transparent effort" to avoid Board precedent supporting the refusal and that it was clear from reference to applicant's specimens of use (reprints of numerous web pages accessible through the LAWYERS.COM web site) "that providing information about lawyers is one of the primary purposes of the website."

Applicant responded by arguing that while a term may be descriptive or generic for certain services, that does not preclude its registration for other goods or services. Also, applicant asserted that deletion of the term "lawyers" from its identification was not, as the examining attorney had contended, disingenuous, and applicant explained that it "never argued that its services didn't extend to providing information about lawyers, only that the services now covered by the application don't cover

5

such activity."  In this response, applicant referenced its earlier amendment of the application "to seek registration on the Supplemental Register," stated that the application "seeks registration of LAWYERS.COM on the Supplemental Register," and concluded its remarks by stating "this application is in condition for registration on the Supplemental Register."  Nowhere in the response does applicant reference an alternative position that LAWYERS.COM is registrable on the Principal Register, with or without resort to Section 2(f).

The examining attorney then issued a final refusal to register the mark on the Supplemental Register, on the basis that applicant's mark is generic and incapable of identifying the source of applicant's services.  Applicant filed a notice of appeal.  The examining attorney and applicant have filed briefs, and an oral hearing was held.

In its reply brief, applicant affirmatively states that it "does not now dispute that LAWYERS.COM is descriptive" in connection with its services, and notes that it had submitted evidence under Section 2(f) and an amendment to the Supplemental Register in acknowledgment of the descriptiveness of the designation.[3]  While neither the

---

[3] Pursuit of registration under Section 2(f) is a concession that the proposed mark is not inherently distinctive.  See Yamaha

6

applicant nor the examining attorney has specifically discussed applicant's proffer of evidence under Section 2(f), applicant concluded both its main brief and reply brief by requesting that its proposed mark be allowed to register "on the Supplemental Register or under Section 2(f)." We find that the question of registrability on a claim of acquired distinctiveness has been preserved for appeal. Accordingly, we must determine in the first instance, whether LAWYERS.COM is generic or otherwise incapable of designating source. In making such determination, we have considered the entire record, including the two declarations offered by applicant to show acquired distinctiveness. If we hold the designation not to be generic and instead capable of registration, then we may specifically discuss the arguments and the quantity of evidence of acquired distinctiveness.

---

International Corp. v. Hoshino Gakki Co., 840 F.2d 1571, 6 USPQ2d 1001, 1005 (Fed. Cir. 1988). A proposed amendment to seek registration on the Supplemental Register, however, is not an admission that the proposed mark has not acquired distinctiveness. See 15 U.S.C. §1095. Thus, an applicant may argue in the alternative that a non-distinctive designation has acquired distinctiveness and is registrable on the Principal Register or at least is capable of acquiring distinctiveness and is registrable on the Supplemental Register. See Trademark Manual of Examining Procedure §816.04 and Trademark Trial and Appeal Board Manual of Procedure §1215.

*The Record*

The record on which we must decide the question of whether the proposed mark is generic includes a dictionary definition submitted by the examining attorney of "lawyer" as "one whose profession is to conduct lawsuits for clients or to advise as to legal rights and obligations in other matters."[4] The examining attorney also has included a definition of "domain name," which explains that a "domain name" is an Internet address "in alphabetic form," "must have at least two parts," and "the part on the right … identifies the highest subdomain, such as the country (fr for France, uk for United Kingdom) or the type of organization (com for commercial, edu for educational, etc.)."[5] In addition, the examining attorney submitted a reprint of a web page showing the result of a search for "com" on searchWebServices.com, which reads "On the Internet, 'com' is one of the top-level domain names that can be used when choosing a domain name. It generally

---

[4] The definition appears on a reprint of a web page titled Merriam-Webster Online Dictionary. The examining attorney, in the office action that introduced this definition into the record, referenced it as having been retrieved from www.yourdictionary.com. Applicant did not object to the source of the definition and, in its brief, stated that it "does not dispute that this is one definition of the word lawyer."

[5] From www.computeruser.com/resources/dictionary/definition.

describes the entity owning the domain name as a commercial organization."  Finally, we take judicial notice of the following definition of "TLD":  "(Top-Level-Domain) The highest level domain category in the Internet domain naming system. There are two types: the *generic* top-level domains, such as .com, .org, and .net…." McGraw Hill Computer Desktop Encyclopedia 977 (9th ed. 2001) (emphasis added).

To gauge the likely significance of LAWYERS.COM to prospective consumers or users of applicant's services, the examining attorney relies on the numerous pages from applicant's web site that applicant submitted as specimens. The examining attorney also relies on reprints of various web pages from other entities that the examining attorney views as "evidence demonstrating that web sites devoted to law, legal news, and legal services also provide information about and/or databases of lawyers."  (May 18, 2004 office action, the last action prior to this appeal)

Also in the record are reprints of web pages submitted by the examining attorney to show use, by entities other than applicant, of the following domain names: www.massachusetts-lawyers.com ("Massachusetts-Lawyers.com is a Service of the Law Offices of K. William Kyros, PC in Boston, Massachusetts.  The law firm helping [sic] lawyers and their clients use the internet to find qualified legal

counsel."); www.truckerlawyers.com ("Trucker Lawyers Legal Services for Truckers Nation Wide"); www.new-jersey-lawyers.com ("Our database covers the entire state of New Jersey.  Search to find a lawyer in your local area and to suit your specific legal needs."); www.connecticut-lawyers.com ("Connecticut-Lawyers.com is a service that locates Connecticut Attorneys specific to your needs."); www.lep-lawyers.com ("Welcome to the Web site of Levy, Ehrlich & Petriello.  This site is designed to provide information about our firm and the services we offer. … The information you obtain at this site is not, nor is it intended to be, legal advice.  You should consult an attorney for individual advice regarding your own situation."); collectionlawyers.com ("We have been collection attorneys for over 20 years.  Find out why our clients return again and again."); www.medialawyer.com ("International Entertainment, Multimedia & Intellectual Property Law and Business Network Sponsored by Harris Tulchin & Associates"); and www.wrongfuldeath-lawyers.com ("Wrongful Death Lawyers is intended to provide up to date references and resources for Wrongful Death Lawyers.  The links and resources are provided as a public service for attorneys and consumers.").[6]

---

[6] The examining attorney also submitted a reprint of a web site

In essence, the examining attorney contends that these domain names establish the need of competitors of applicant to use a generic term, LAWYERS.COM, in their domain names for their respective web sites.

As for the evidence applicant has submitted, there are various submissions intended to establish acquired distinctiveness of LAWYERS.COM, specifically, the two previously-referenced declarations and certain results of an internet search by counsel.  In addition, applicant has proffered information about various registered marks "composed of terms that can be considered generic in some contexts, but have still been allowed to register in connection with a narrower description of goods."  Brief, p. 15.  This evidence was obtained from the USPTO TARR database[7], which includes information about pending and registered trademarks.

*Analysis*

When a proposed mark is refused registration as generic, the examining attorney has the burden of proving

---

from www.personalinjurylawyers.com.au but, because the site appears to aid those searching for personal injury lawyers located in Australia, it is of little, if any, relevance to the question of how United States Internet users would perceive the designation LAWYERS.COM.

[7] TARR stands for Trademark Applications and Registrations Retrieval.

genericness by "clear evidence" thereof.  See In re Merrill Lynch, Pierce, Fenner & Smith, Inc., 828 F.2d 1567, 4 USPQ2d 1141, 1143 (Fed. Cir. 1987); see also In re Gould Paper Corp., 834 F.2d 1017, 5 USPQ2d 1110, 1111 (Fed. Cir. 1987).  The critical issue to determine is whether the record shows that members of the relevant public primarily use or understand the term sought to be registered to refer to the genus of goods or services in question.  H. Marvin Ginn Corp. v. International Ass'n of Fire Chiefs, Inc., 782 F.2d 987, 228 USPQ 528, 530 (Fed. Cir. 1986); In re Women's Publishing Co. Inc., 23 USPQ2d 1876, 1877 (TTAB 1992). Making this determination "involves a two-step inquiry: First, what is the genus of goods or services at issue? Second, is the term sought to be registered ... understood by the relevant public primarily to refer to that genus of goods or services?"  Ginn, *supra*, 228 USPQ at 530. Evidence of the public's understanding of a term may be obtained from any competent source, including testimony, surveys, dictionaries, trade journals, newspapers and other publications.  See Merrill Lynch, *supra*, 4 USPQ2d at 1143 (Fed. Cir. 1987), and In re Northland Aluminum Products, Inc., 777 F.2d 1556, 227 USPQ 961, 963 (Fed. Cir. 1985).

1. The Genus of Services

As for the genus of services involved in this appeal, the examining attorney focuses on applicant's identification of services but argues that "providing information about law, legal news and legal services includes providing information about lawyers. Accordingly, the genus of services at issue includes providing information about lawyers." Brief, p. 6. Applicant, on the other hand, focuses less on the identification and asserts, "the genus for its services may be more accurately described as 'interactive database services focusing on a variety of types of law-related information.'" Brief, p. 6. Neither is quite right, for neither acknowledges the "online" nature of the identified services[8], and applicant's focus on only "law-related information" does not adequately account for the identified information services related to legal services.

In the Magic Wand case, the Federal Circuit stated, "a proper genericness inquiry focuses on the description of services set forth in the [application or] certificate of

---

[8] We take judicial notice of the following definition of "online":  "…(2) Said of a person who is actively communicating over a network.  'Online' in this sense means your computer is connected to a network host or service and you can participate in Internet activities such as discussion groups or interactive talk sessions." net.speak the internet dictionary p. 138 (1994).

registration." Magic Wand Inc. v. RDB Inc., 940 F.2d 638, 19 USPQ2d 1551, 1552 (Fed. Cir. 1991). Applicant also reminds us of the Allen Electric case, in which the Court of Customs and Patent Appeals stated that "trademark cases must be decided on the basis of the identification of goods as set forth in the application." In re Allen Electric and Equipment Co., 458 F.2d 1404, 173 USPQ 689, 690 (CCPA 1972). Finally, applicant also reminds us of two Board cases that focus on the significance of written identifications: In re Vehicle Information Network Inc., 32 USPQ2d 1542, 1544 (TTAB 1994) ("the question of registrability must be determined … on the basis of the goods or services as set forth in the application") and In re Datatime Corporation, 203 USPQ 878, 879 (TTAB 1979) ("it is the goods as set forth in the application papers that are determinative of the issue").

The Magic Wand case involved a petition to cancel the mark TOUCHLESS, on the ground that it was generic for services identified as "automobile washing services." The petitioner in that case attempted to focus on a "relevant public" unwarranted by the description of services, specifically, "operators and manufacturers of car wash equipment," rather than purchasers of automobile washing services. Thus, the Federal Circuit's statement that "a

proper genericness inquiry focuses on the description of services set forth in the certificate of registration" must be read in that context, i.e., as an explanation of the error in petitioner's attempt to have the Board and, later, the Federal Circuit focus on a relevant public not warranted by the description of services. Further, the quoted reference from the Magic Wand case is preceded by the Federal Circuit's observation that "[t]he description in the registration certificate identifies the services in connection with which the registrant uses the mark." Magic Wand, 19 USPQ2d at 1552. The Federal Circuit also observed, "According to the registration, the mark TOUCHLESS *is used* in connection with automobile washing services." Id. (emphasis added). Thus, it is clear that the analytical focus on the description of services is based on the premise that the description reflects actual conditions of use of a mark. See also, In re American Fertility Society, 188 F3d 1341, 51 USPQ2d 1832, 1836 (Fed. Cir. 1999) ("The PTO must prove: (1) what the genus of the services the Society provides is…."), and In re Web Communications, 49 USPQ2d 1478, 1479 (TTAB 1998) ("We agree with applicant that its services in the broadest sense would be considered 'consulting services.' But there are many varieties of consulting services and each would

15

necessarily be further identified as to the particular subject or focus of the services being offered.  Here applicant has described a major focus of its services *in the specimens of record* as 'publication and communication via the World Wide Web….'  Applicant's services enable its customers to achieve this communication by assisting them in setting up their own Web sites.") (emphasis added).

We do not view any of the other three decisions on which applicant relies as stating precepts that run counter to the premise that an identification is rooted in the reality of use.  Again, those decisions must be read in context.

In both Allen Electric and Datatime, each applicant was arguing that its goods were of a more specific type than would be apparent from the identification.  As the Board explained in Datatime, because Section 7(b) of the Lanham Act bestows upon the owner of a registration the presumption of use of a mark for all goods or services identified in a registration, the question of registrability must be determined by considering any goods or services falling within the literal scope of an identification, and not merely the particular goods or services an applicant may be marketing at the time when registrability is determined.  These decisions do not run

counter to the presumption that an identification of goods or services is rooted in the reality of use but, rather, explain that the presumption extends to all goods or services encompassed by an identification.

In the Vehicle Information case, the applicant was essentially arguing that the relevant public would perceive its services as somewhat different from what they actually were, given the likely connotation of its mark for that public. The Board then focused on the identification in its discussion of possible meanings consumers might find in the mark. This is nothing more than an example of the well-settled rule that likely perception of a mark is not evaluated as an abstract matter but in connection with the identified goods or services.

In accordance with this analytical framework, while we consider applicant's identification as largely defining the genus of services involved in this case, we do so on the premise that the identification is a required element of an application precisely because it is expected to identify the goods or services in connection with which an applicant uses its mark and for which it therefore seeks registration of the mark. We also note that in the recent Steelbuilding.com decision, which involved a genericness refusal, the Federal Circuit began its analysis of the

genus by focusing on applicant's amended recitation of services ["computerized on-line retail services in the field of pre-engineered metal buildings and roofing systems"], but interpreted the meaning of "computerized on-line retail services" in light of the actual use being made by the applicant on its web site. See In re Steelbuilding.com, 415 F.3d 1293, 75 USPQ2d 1420, 1422 (Fed. Cir. 2005):

> The applicant defined its goods and services, in its amended application, as "computerized on-line retail services in the field of pre-engineered metal buildings and roofing systems." Although the definitions of the applicant and of the Board appear nearly identical, the parties understand the phrase "computerized on-line retail services" differently. Applicant sells steel buildings on line, but the record indicates it provides services beyond mere sales.

Id. at 1422.

In the case at hand, we have interpreted the nature of applicant's "online interactive database featuring information exchange in the fields of law, legal news and legal services" in light of what the record shows the database to include and, therefore, what type of information about "law, legal news and legal services" is exchanged between applicant and consumers or users of its website.

As noted earlier, the specimens of use which applicant submitted are copies of web pages from its web site.[9] The first such page appears to be applicant's "home" page [www.lawyers.com/site/default] and bears at the top the exhortation "Locate a Lawyer with lawyers.com!" The headline for the page portrays, in large print, "lawyers.com" and adjacent thereto, in smaller print, "Your connection to legal information & resources." Lower on the page are links to other web pages, titled, respectively, "About The Law," "Ask A Lawyer," "Hiring A Lawyer" and "Law Today."

The "About The Law" page presents a list of areas of law that the viewer can click on to view "informative articles about the most common consumer areas of law, as well as background on the judicial system, important laws and cases, and the U.S. Constitution." The page also explains to the viewer "After a quick review of the [selected] article, you'll be better prepared to choose a lawyer by searching our database."

The "Ask A Lawyer" page explains "This area of lawyers.com is designed to provide you with a unique forum in which to ask general questions of our hosting

---

[9] We note, too, that the Cooper declaration, in paragraph 3, attests to use of "LAWYERS.COM in commerce in connection with an

attorneys."  The page also explains that the hosting attorneys are practicing lawyers that maintain listings in the Martindale-Hubbell Law Directory, that the information provided through the page is for educational purposes, and that the viewer in need of specific legal advice "should obtain the services of a qualified attorney such as those listed in the Law Directory."

The "Hiring A Lawyer" page contains information on such topics as "Do I Really Need an Attorney?" "Thinking Things Through," "Starting the Process," "Evaluating Your Candidates," "What Will it Cost?" "Your Attorney's Responsibilities to You, the Client," "When Things Don't Go As You Expected," and "Legal Resources."

Finally, the "Law Today" page contains links to specific articles defining areas of the law, to cases in the news or famous cases, and to legal headlines.

We agree with the examining attorney's conclusion that the specimen web pages applicant submitted demonstrate "that applicant's information about the *law* includes providing information about lawyers and, in fact, is offered for the express purpose of assisting the individual in selecting a lawyer."  Brief, p. 4; emphasis added.  The

---

'online interactive database featuring information exchange in the fields of law, lawyers, legal news, and legal services.'"

examining attorney argues, too, that providing information about *legal news* or *legal services*, particularly as demonstrated by applicant's web site, involves providing information about lawyers.

Applicant argues, however, that its deletion of the word "lawyers" from its identification of services "limited its covered services" by excising "online services relating to information exchange in the field of 'lawyers.'" Brief, p. 3. In addition, applicant argues that it "is not seeking federal registration of its mark in connection with all of the different types of content or services available on Applicant's web site" and its mark "is capable of distinguishing its narrower description of services."

Under the circumstances we find the genus of services to be providing a web site[10] with a database of information covering the identified topics of law, legal news and legal services and that a central and inextricably intertwined element of that genus is information about lawyers and information from lawyers.

## 2. What Will the Relevant Public Understand?

The next question is: who are the members of the relevant public for such services, and what will they

---

[10] The phrase "online interactive database" in the identification is an apt synonym for "web site."

understand when confronted with LAWYERS.COM?  We conclude
that members of the relevant public include lawyers who may
be seeking legal information or who may be seeking other
lawyers to whom they may refer clients.  The relevant
public also includes laypersons that may be seeking legal
information, legal representation, or referrals.

As noted earlier, the examining attorney has made of
record a dictionary definition of "lawyer" that applicant
concedes is accurate as one definition of the word.  In
addition, the examining attorney has put into the record
reprints of numerous web pages from web sites that include
information on the law, the nature of legal services and
information about obtaining a lawyer.  These include many
of the previously-referenced web sites that utilize
"lawyers.com" in their web site domain names, and the web
site thelaw.com.

The relevant public, including both lawyers and non-
lawyers, when they consider LAWYERS.COM in conjunction with
the class of involved services, would readily understand
the term to identify a commercial web site providing access
to and information about lawyers.  Some members of the
relevant public would think of a web site that would
provide information about lawyers, including their
specialties, contact information, and the like, which is

part of what applicant's web site does. It is also likely that some members of the relevant public would think of a web site that allows site visitors to actually contact other lawyers, as exemplified by applicant's "Ask a Lawyer" web page.

A lawyer member of the relevant public might understand, better than a non-lawyer, that the web site would have limitations, for example, that it would include disclaimers and would not present information from lawyers accessible via the site as "legal advice." This, however, does not alter the likelihood that either type of member of the relevant public would think of the web site in the ways we have discussed.

In addition, the likelihood that some members of the relevant public would think of a web site providing online access *to* lawyers while others might think of a web site providing online information *about* lawyers does not render LAWYERS.COM non-generic. Either understanding of the term would be generic and the fact that a term may have two generic meanings when considered in connection with a particular class of services does not mean it is not generic. Compare Steelbuilding.com, *supra*, 75 USPQ2d at 1422-23 (the Federal Circuit found neither of two possible meanings for the mark STEELBUILDING.COM to be generic) with

23

Abercrombie & Fitch Company v. Hunting World, Inc., 537 F. 2d 4, 189 USPQ 759, 766 (2d Cir. 1976) (stating "a word may have more than one generic use," the Second Circuit found "safari" to be generic in multiple contexts, although not in all contexts).  See also Northland Aluminum, *supra* (the Federal Circuit found BUNDT generic for cakes and cake mixes); and Gear Inc. v. L.A. Gear California Inc., 670 F.Supp. 508, 4 USPQ2d 1192, 1197 (S.D.N.Y. 1987) ("A word may have more than one generic use, and it is protected in each of its generic uses from appropriation by any one merchant."), vacated in part, dismissed, 13 USPQ2d 1655 (S.D.N.Y. 1989) (disposition of some claims by summary judgment vacated by a settlement agreement of the parties and all claims dismissed).

Applicant has argued that a term that "may be considered descriptive or generic for some goods or services may still function as a mark in connection with other goods or services or to other markets" and that it "is not seeking to register its mark LAWYERS.COM for selling lawyers or offering the services of lawyers, but for the more limited services now covered by its application."  Brief, pp. 8 and 15, respectively. Reference to the decision of In re Seats, Inc., 757 F.2d 274, 225 USPQ 364 (Fed. Cir. 1985), is helpful in assessing

this argument. That case involved an application to register SEATS as a mark for "ticket reservation and issuing services for various events by means of a computer," and the Federal Circuit stated: "The term 'seats' may be generic in relation to chairs or couches or bleachers. It is clearly not generic to reservation services. Contrary to the Board's statements, Seats is not selling seats, as would for example a furniture merchant, but is selling a reservation service…." Id. at 367-68. Just as Seats, Inc. was not selling seats, applicant here is not selling lawyers,[11] but it is there that the similarity ends. Though the Federal Circuit noted the Board's concern with "a need of others to use SEATS in describing the present services," there is no indication in the Seats decision that the Board actually had before it evidence of use of the term by other purveyors of ticket reservation and issuance services. In contrast, the record in this case evidences use of "lawyers.com" as part of the domain names of numerous hosts of web sites; and those web sites provide information to lawyers and laypersons that is the same as or very similar to that provided by applicant's

---

[11] The record does not reveal whether applicant is actually "selling" anything, i.e., charging visitors to its web site. Thus, the revenue figures reported in the Cooper declaration are without context and the declarant does tie the figures to particular services or activities of applicant.

web site. In short, this case does not involve a perceived need for others to use a term, but involves a demonstrated use of the term by others. The relevant public will, therefore, perceive use of "lawyers.com" as indicating a web site (an "online interactive database featuring information exchange") focused on lawyers, legal services, and the areas of the law in which lawyers practice or render their services.

Applicant argues that its web site is different from the sites of others that also employ the term "lawyers.com" in their domain names. Specifically, applicant argues that the other names and web sites are different, because the other names add more specific terms to "lawyers.com" and thus more immediately reveal the nature of the sites, as well as because the lawyer "search or directory feature" of applicant's site is not the site's "primary function, or even the most prominent feature." Brief, p. 7.

Insofar as the first of these two arguments implies that LAWYERS.COM cannot be generic for applicant's site because it is more general and vague compared to such names as truckerlawyers.com and massachusetts-lawyers.com, we do not find the argument persuasive. The name for applicant's site is simply broad in scope, and the content of its web site appears to match that breadth. As for applicant's

26

argument that its lawyer search or directory feature is not a primary or prominent feature of its web site, we note the exhortation "Locate a Lawyer with lawyers.com!" on applicant's main web page; and even linked pages, such as its "About the Law" page, explains "After a quick review of the [selected] article, you'll be better prepared to choose a lawyer by searching our database." In short, we agree with the examining attorney that applicant's web site is all about the law, obtaining information on the law from lawyers, and finding lawyers that can help one with a legal problem.

Another argument advanced by applicant is that its LAWYERS.COM name is no less distinctive than many "arguably generic terms" that the USPTO has approved for registration on the Principal or Supplemental Registers. In support of this argument, applicant relies on TARR printouts of information on various registrations, many of which are ".com" marks. There can be no doubt, however, that "the Board … must assess each mark on the record of public perception submitted with the application." In re Nett Designs Inc., 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001). Accordingly, there is "little persuasive value in the registrations" applicant has submitted. Id. See also, In re First Draft, Inc., 76 USPQ2d 1183 (TTAB 2005)

27

(even when the applicant submitted copies of entire files from other registrations, the Board did not find the evidence persuasive).

The final argument applicant advances in its main brief is that under the Federal Circuit's <u>Oppedahl</u> decision, <u>In re Oppedahl & Larson LLP</u>, 373 F.3d 1171, 71 USPQ2d 1370 (Fed. Cir. 2004), the ".COM" portion of LAWYERS.COM can only be considered descriptive, not generic. By implication, then, applicant is arguing that LAWYERS.COM cannot be generic if any portion of it is not.

As the Board noted in its decision in the <u>Eddie Z's</u> case, <u>In re Eddie Z's Blinds and Drapery Inc.</u>, 74 USPQ2d 1037 (TTAB 2005), we are cognizant of the Federal Circuit's ruling in <u>Oppedahl</u>, which cautions that while the "addition of a TLD such as '.com' or '.org' to an otherwise unregistrable mark will typically not add any source-identifying significance," this "is not a bright-line, per se rule" and that "exceptional circumstances" might yield a different result. <u>Oppedahl</u>, 71 USPQ2d 1374. As the Board also noted in <u>Eddie Z's</u>, it does not view <u>Oppedahl</u> as creating a per se rule that addition of a TLD to an unregistrable term always results in at least a potential mark, i.e., a non-generic compound and, instead, views the <u>Oppedahl</u> decision as leaving the door open for registration

28

of combinations of unregistrable terms and TLDs in the exceptional circumstances whereby the combination results in a whole greater than the sum of its parts. Eddie Z's, 74 USPQ2d at 1042. While the Federal Circuit determined in the Steelbuilding.com case that STEELBUILDING.COM had a non-generic meaning and was therefore registrable, we do not find the designation now before us to present such exceptional circumstances.

Because we find LAWYERS.COM generic, we do not address applicant's arguments that the designation is merely descriptive and that there is sufficient acquired distinctiveness to allow registration under Section 2(f).

Decision: The refusal of registration on the ground of genericness is affirmed.