**In re SEATS, INC.**

**Appeal No. 84–1437.**

United States Court of Appeals,
Federal Circuit.

March 20, 1985.

Sumner C. Rosenberg, Troutman, Sanders, Lockerman & Ashmore, of Atlanta, Ga., argued for appellant.

Robert D. Edmonds, Asst. Sol., United States Patent & Trademark Office, Arlington, Va., argued for appellee. With him on the brief Joseph F. Nakamura, Sol. and Jere W. Sears, Deputy Sol., Washington, D.C.

Before MARKEY, Chief Judge, and MILLER and SMITH, Circuit Judges.

MARKEY, Chief Judge.

Appeal from a decision of the Patent and Trademark Office Trademark Trial and Appeal Board (Board) refusing to register SEATS as a service mark for "ticket reservation and issuing services for various events by means of a computer". *In re Seats, Inc.*, 221 USPQ 1207 (1984). We reverse.

*Background*

Seats, Inc. (Seats) filed application Serial No. 253,070 on March 7, 1980, alleging use since August, 1973. The examiner rejected the application on the ground that SEATS was descriptive of the services and suggested that the identification of services be changed to that set forth above. Seats made the change and argued that the mark was suggestive of a "ticket reservation" service. When the examiner repeated his rejection, on the ground that ticket reservation "inherently involves" seat reservation, Seats amended the application by inserting a claim that the mark had become distinctive of its services and enclosing affidavits supporting its right to registration under section 2(f) of the Lanham Act (15 U.S.C. § 1052(f)) (Act).

The examiner again refused registration, on the view that SEATS "refers to the generic name of the end product of applicant's services" and could never therefore become distinctive of those services. Because the examiner thought it "unlikely" that consumers could *ever* come to see the mark as indicating origin of the services, Seats filed statements of 20 dealers and 30 customers asserting that consumers had done precisely that.

■ Noting an apparent contradiction in Seats' simultaneous assertion of inherent non-descriptiveness and of acquired distinctiveness under section 2(f), the examiner entered a final rejection based on his view that SEATS is the common descriptive name of the "purpose" of the services, and that the statements were merely evidence that SEATS had acquired a "de facto" secondary meaning.[1]

Apparently in response to Seats' continuing assertions of inherent non-descriptiveness, the Board answered affirmatively its "first" question, i.e., whether the mark was merely descriptive within the meaning of Section 2(e)(1) of the Act. It considered its "second" question, i.e., whether SEATS is "so highly descriptive as to be incapable of serving a trademark function," to be "a much closer one." It again answered in the affirmative, however, citing decisions holding other marks "incapable" and noting that SEATS is related in dictionary and common parlance to "tickets" or "reservations", either of which would be "incapable".

The Board twice referred to what it saw as a need of others to use SEATS in describing the present services. Viewing the mark as a synonym for "tickets" or "reservations", admitting that others could use SEATS descriptively if the registration were granted, and candidly recognizing the necessary subjectivity of its judgment, the Board concluded that SEATS was so descriptive as to render it incapable of designating origin.

The Board ended its opinion with these statements:

> This being so, applicant's evidence of secondary meaning, admittedly well organized and impressive, must be viewed as only "de facto" in import and incapable of altering the inability of the designation "SEATS" to function as a mark.[6]

---

[6] Should applicant, however, ultimately prevail in this proceeding concerning its contentions as to the capability of "SEATS" to function as a mark, the Board would be constrained to find, after careful review thereof, that the evidence of secondary meaning which has been made of record is sufficient to establish "acquired distinctiveness" within the meaning of Section 2(f) of the Trademark Act.

### ISSUE

Whether the Board erred in refusing to order registration.

### OPINION

#### *"Incapable"*

Having answered in the affirmative its question of whether SEATS was "merely descriptive" of the involved services under § 2(e)(1),[2] the Board went on, as above indicated, to give the same answer to its second question, i.e., whether SEATS was *so* descriptive as to render it *incapable* of designating origin of the services under any conditions, including, presumably, those conditions set forth in § 2(f).[3]

> *No trademark by which the goods of the applicant may be distinguished* from the goods of others *shall be refused* registration on the principal register *on account of its nature* unless it—
>
>    *      \*      \*      \*      \*      \**
>
> (e) consists of a mark which, (1) when applied to the goods of the applicant is merely descriptive ... of them ... [Emphasis added]

---

1. "Secondary meaning", though widely used can be misunderstood. "Secondary" refers only to the later time at which an additional meaning was acquired, not to a lesser importance or value in that additional meaning. Indeed, in the context of the marketplace, a so-called "secondary" meaning may be "primary" (Rich, J., concurring in *In re Automatic Radio Mfg. Co.,* 404 F.2d 1391, 1395, 56 CCPA 817, 821, 160 USPQ 233, 236 (1969). The statute, § 2(f), under which registration was here sought, speaks of marks that have "become distinctive", i.e., of marks that had and retain a descriptive connotation but that have "acquired distinctiveness". Hence the substitution in this opinion of "acquired" for "secondary".

2. Section 2 of the Trademark Act, 15 U.S.C. § 1052, provides in pertinent part:

3. Section 2(f) reads in pertinent part:

   (f) ... *nothing* in this chapter *shall prevent the registration* of a mark used by the applicant *which has become distinctive* of the applicant's goods in commerce. [Emphasis added.]

Its characterization of SEATS as "so highly descriptive as to be incapable of appropriation as a trademark or service mark", said the Board, "would render applicant's credible body of evidence as to secondary meaning irrelevant to the issue of registrability", citing *Weiss Noodle Co. v. Golden Cracknel & Specialty Co.*, 290 F.2d 845, 48 CCPA 1004, 129 USPQ 411 (1961) (HA–LUSH–KA refused registration as phonetic equivalent of Hungarian word for noodles, despite some evidence of acquired distinctiveness), *J. Kohnstam, Ltd. v. Louis Marx & Co.*, 280 F.2d 437, 47 CCPA 1080, 126 USPQ 362 (1960) (MATCHBOX SERIES refused registration for toys sold in matchbox packages), *Miller Brewing Co. v. Falstaff Brewing Corp.*, 655 F.2d 5, 211 USPQ 665 (1st Cir.1981) (LITE beer), and *In re Helena Rubinstein, Inc.*, 410 F.2d 438, 56 CCPA 1110, 161 USPQ 606 (1969) (PASTEURIZED unprotectible for face cream). The solicitor cites the concurring opinion in *In re Sun Oil Co.*, 426 F.2d 401, 57 CCPA 1147, 165 USPQ 718 (1970) and *Technical Publishing Co. v. Lebhar-Friedman, Inc.*, 729 F.2d 1136, 222 USPQ 839 (7th Cir.1984) in support of his argument that "the Board did not err in declining to consider the evidence of secondary meaning."

Describing its second question as "close", the Board nowhere discussed the question of whether SEATS was so descriptive of *the services themselves* as to be incapable of ever becoming distinctive of those services. In finding descriptiveness under § 2(e)(1), and in responding to Seats' assertion that the mark was suggestive and not merely descriptive under *that* section, the Board perceived the mark as describing a "major product" or "function" of the services, noting that no imagination is required of one encountering the services and the mark.

In discussing "incapability" however, the Board stated first the view that SEATS was so highly descriptive that "it should remain in the public domain available for all to use in describing service activities of this kind." The Board then gave as its reasons: (1) that "a common term or descriptor for some central or distinctive characteristic" may be "incapable"; (2) that "tickets" or "reservations" are such apt names for the "central commodity handled via" the services that *those terms* (for which registration was *not* being sought) would be "incapable"; (3) that the dictionary defines "seat" as a right evidenced by a "ticket"; (4) that in common parlance "seats" is used as a synonym for "tickets" or "reservations"; (5) that Seats thus deals in "seats" as much as in "tickets" or "reservations"; and (6) that *"all three terms"* are so descriptive that they "must remain freely available for competitive use". (Emphasis added.) Though, as above indicated, the Board recognized that if the registration here sought were issued others could still use "seats" descriptively in presenting the same services, it said that fact does not "remove the basic infirmities of source identification we have found". Continuing its focus on synonyms, the Board added: "Nor would it be desirable to rescue *all such terms* from the bars of 'registrability' by a rationalization that descriptive usage of *such words* remains available to others." (Emphasis added.)

Tendering a broad attack on the concept of "incapability", Seats argues strenuously that this court should overrule any predecessor court holdings that registration may be refused on a finding of "incapability" *without* considering evidence of acquired distinctiveness. In the alternative, Seats suggests that if courts may do that when the mark is "the common descriptive name" or "generic name" of the product or service, it should not be extended to situations where, as here, the Board found the mark descriptive of only "some central or distinctive characteristic" of the product or service. In any event, says Seats, the decision should rest on the facts of each case and the facts of record here establish its right to the registration it seeks under the provisions of § 2(f) of the statute.

In arguing for the demise of the notion that a term may be so generic or descriptive as to preclude forever its acquisition of trademark or service mark significance,

Seats cites 3 CALLMANN, UNFAIR COMPETITION, TRADEMARKS & MONOPOLIES, § 18.03 (4th Ed.1983); Folsom and Teply, *Trademarked Generic Words*, 89 Yale L.J. 1323 (1980), GILSON, TRADEMARK PROTECTION AND PRACTICE, pp. 17–19 (Supp.1984); 3 CALLMANN, UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES, p. 74 (Cumm.Supp. 1982). Those writers suggest the need for courts to view all the evidence, however strong be the improbability that the mark under consideration may acquire trademark or service mark significance, and for courts to abandon *a priori* theories of what may or may not be possible. In essence, the cited commentators suggest that courts which have found marks "incapable" should have based their holdings on failure of the evidence to establish distinctiveness in the face of the genericness or descriptiveness of the mark.

SEATS further points to the absence of a statutory basis for what it calls the Board's refusal to consider the evidence of acquired distinctiveness.

Strong as are the attacks of writers on judicial creation of the concept of "incapability", and attractive as is the proposition that judicial decisions should rest on the facts of record and not on some broad notion or proposition contrary to those facts, *see In Re Automatic Radio Mfg. Co.*, 404 F.2d 1391, 56 CCPA 817, 160 USPQ 233 (CCPA 1969), we need not and accordingly do not decide in this case the general question of whether the Board may ever in future cases refuse to consider evidence of acquired distinctiveness.[4]

### Acquired Distinctiveness

As reflected in the Board's closing paragraph and footnote quoted above, the Board carefully reviewed the evidence submitted by Seats in its application to register under § 2(f) of the Act. That section reads:

(f) Except as expressly excluded in paragraphs (a), (b), (c), and (d) of this section, nothing herein shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce.

■ Though the Board said it would be constrained to find that the evidence did establish that the mark *had* "acquired distinctiveness" within the meaning of § 2(f), i.e., that SEATS *is* functioning as a mark, it established a requirement that Seats must first prevail in its contention that SEATS is capable of being protected as a service mark, which the statute, 15 U.S.C. § 1127, defines as "a mark used in the sale or advertising of services to identify the services of one person and distinguish them from the services of others." On this record, we need not hold that requirement improper, because we view the mark as capable of being protected.

The Board did not find that SEATS was generic. Nor could it have so found. The term "seats" may be generic in relation to chairs or couches or bleachers. It is clearly not generic to reservation services. Contrary to the Board's statement, Seats is not selling seats, as would for example a furniture merchant, but is selling a reservation service, and consideration of whether generic terms are *per se* unregistrable, *see Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, —— U.S. ——, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985), is not here involved.

It is equally clear that SEATS is not "the common descriptive name" of reservation

---

4. We also leave for another day the question of whether enactment of P.L. 98–620, signed by the President on November 8, 1984, effectively eliminates the possibility that the Board or a court may in future ever disregard evidence of acquired distinctiveness. Referring to cancellation of registered marks and unique products and services, P.L. 98–620 amends § 14(c) of the Act by adding these two sentences:

A registered mark shall not be deemed to be the common descriptive name of goods or

services solely because such mark is also used as a name of or to identify a unique product or service. The primary significance of the registered mark to the relevant public rather than purchaser motivation shall be the test for determining whether the registered mark has become the common descriptive name of goods or services in connection with which it has been used.

services (assuming the quoted phrase has a meaning different from "generic"). That is true when purchasers of the services will be seated and when "standing room" is involved. Nor did the Board find that SEATS was the common descriptive name of the services involved (as stated above, it did find the mark merely descriptive of the product and function under § 2(e)(1)). On the contrary, the Board recognized that issuance of the registration here sought would not deprive others of the use of "seats" in connection with such services. Competitors would remain free to advertise "seats are available", "balcony seats—$12.00", "reserve your seats through us", etc, and theatres may employ "SEATS" in advertisements and on box offices and ticket windows.

In this application, Seats seeks registration under § 2(f) and has filed what the Board described as extensive evidence of acquired distinctiveness. The Board has found that evidence sufficient to establish "acquired distinctiveness." We cannot say on the record before us that that finding is clearly erroneous.[5] The Board was at liberty to have found that evidence insufficient to have established an acquired distinctiveness, in light of what it considered an over-balancing descriptiveness content in the mark sought to be registered. It appeared to reach its ultimate conclusion, however, on the ground that other terms, which it considered synonymous, could not by any evidence have been shown to have acquired distinctiveness. Whether terms not sought to be registered could or could not acquire distinctiveness is irrelevant where, as here, the claim is that the mark sought to be registered has acquired distinctiveness and the Board has found that the evidence establishes the truth of that claim.

5. Following publication, an opposer may show that the evidence of record here is not in fact sufficient to establish such acquired distinctiveness as would warrant a registration having nationwide effect. 84–1437.

Accordingly, the decision of the Board must be reversed.

REVERSED.