## In re NORTHLAND ALUMINUM PRODUCTS, INC.

### Appeal No. 85–866.

United States Court of Appeals, Federal Circuit.

Nov. 20, 1985.

---

James L. Dooley, Cushman, Darby & Cushman, Washington, D.C., argued for appellant.

John W. Dewhirst, Associate Sol., U.S. Patent and Trademark Office, Arlington, Va., argued for appellee. With him on the brief were Joseph F. Nakamura, Sol. and Christopher A. Sidoti.

1. *In re Northland Aluminum Products, Inc.,* 221 USPQ 1110 (TTAB 1984). The Board's opinion was subsequently corrected, *inter alia* to delete the erroneous inclusion of sliced apples in a recipe for BUNDT cake batters.

Before DAVIS, KASHIWA, and NEWMAN, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

We affirm the decision[1] of the United States Patent and Trademark Office (PTO) Trademark Trial and Appeal Board (the Board), refusing registration of the word BUNDT, in the form shown, as a trademark for "ring cake mix".

# Bundt

Northland Aluminum filed trademark application Serial No. 433,565 on August 23, 1972, alleging use of the mark BUNDT for ring cake mix in interstate commerce since February 10, 1972, said use being by its licensee The Pillsbury Company.

In response to an inquiry from the Examiner as to whether BUNDT was a foreign word, applicant responded that it was "not aware of any particular meaning of the word BUNDT except that through over twenty years of continuous and exclusive use of the term as a trademark for cake pans it has become well known as denoting applicant as the source of such pans."[2]

Citing cookbook recipes and newspaper articles, registration was refused by the Examiner "for the reason that the word presented for registration is the name of a kind of cake—a bundt or bundt style cake" and, as such, "hardly functions as a mark which is capable of distinguishing applicant's goods".

Northland Aluminum amended its application to seek registration of the mark pursuant to section 2(f) of the Lanham Act, 15 U.S.C. § 1052(f), and submitted survey evidence in support of acquired distinctiveness. Applicant also filed the following disclaimer:

2. Northland Aluminum is the owner of the mark BUNDT in stylized form for cake pans, Reg. No. 826,340 issued March 28, 1967, claiming use in commerce since 1951.

Without surrendering any rights which it might have built up under the common law of the respective States, Commonwealths, Districts, Territories, Zones or of identifiable trading areas located therewithin, applicant hereby disclaims any exclusive Federal rights to the word "BUNDT" as applied to a coffee cake as made up from staple ingredients which have been formulated and mixed together by its baker.

Northland Aluminum stated that it "specifically disclaims any endeavor to obtain Federal rights in, much less monopolize, the word "BUNDT" as so applied, either alone or as part of the expression "BUNDT KUCHEN", to denominate a *finished* cake". [emphasis in original.]

The principal thrust of appellant's argument, before the Examiner, the Board, and on this appeal, is that at most BUNDT is a disused foreign word, unknown to most of the American population. Appellant argues that its survey shows that BUNDT is now recognized only in connection with the cake mix packages and cake pans for which appellant has used the word, and not as a descriptive name for a type of cake.

The Examiner, acknowledging that a *de facto* secondary meaning in the word may have been acquired, stated that "this does not mean that applicant can establish an exclusive monopoly over such a descriptive term or a legal or de jure right therein necessary to support registration." The Examiner found "the term BUNDT to be the generic name of the cake made by Applicant's mix" and stated that "[g]eneric terms cannot be rescued by proof of distinctiveness or secondary meaning no matter how voluminous the proffered evidence may be."

Affirming the Examiner, the Board rejected appellant's argument that the original usage of BUNDT is obsolete or insignificant "in that the term only has generic significance among homemakers with training in German Jewish cooking" which Northland Aluminum alleged was a "shrinking minority of American homemakers, constituting not more than 2.8 percent of the population of the United States". *In re Northland Aluminum Products, Inc.,* 221 USPQ 1110, 1113 (TTAB 1984). The Board found this limitation "totally unsupported", referring to evidence "of its broader significance among the German American population". *Id.* The Board also found it significant that the record did not "disclose any alternative to BUNDT to describe the type of German coffee cake known by this term". *Id.* at 1115.

### A.

A trademark is registrable on the Principal Register if it meets the conditions of section 2 of the Lanham Act, which provides in pertinent part:

No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—

\* \* \* \* \* \*

(e) Consists of a mark which, (1) when applied to the goods of the applicant is merely descriptive ... of them....

(f) Except as expressly excluded in paragraphs (a)–(d) of this section, nothing in this chapter shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce.

15 U.S.C. § 1052. As discussed by this court, "jurisprudence under the Lanham Act developed in accordance with the statutory principle that if a mark is capable of being or becoming distinctive of applicant's goods in commerce, then it is capable of serving as a trademark." *In re Owens-Corning Fiberglas Corp.,* 774 F.2d 1116, 1120 (Fed.Cir.1985).

Registration has been refused to generic or common descriptive names on two statutory grounds. The first approach is illustrated in *Weiss Noodle Co. v. Golden Cracknel and Specialty Co.,* 290 F.2d 845, 129 U.S.P.Q. 411 (CCPA 1961), wherein the court refused to register the word HALUSH-KA for noodle products for the reason that this is the Hungarian name of the

product, and thus within the statutory prohibition of section 2(e)(1). "The name of a thing is the ultimate in descriptiveness." *Id.* at 847, 129 U.S.P.Q. at 413.

The second approach views the question as one of trademark capacity. If the asserted trademark is incapable of identifying and distinguishing applicant's goods from those of others, registration has been jointly refused on the basis of the preamble to section 2 and for failure to meet the definition of a trademark under section 45:

> The term "trademark" includes any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify and distinguish his goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.

15 U.S.C. § 1127. A common descriptive name is not a trademark and is not capable of distinguishing an applicant's goods. *In re Helena Rubinstein, Inc.*, 410 F.2d 438, 161 USPQ 606 (CCPA 1969); *Cummins Engine Co., Inc. v. Continental Motors Corp.*, 359 F.2d 892, 149 USPQ 559 (CCPA 1966); *Clairol, Inc. v. Roux Distributing Co., Inc.*, 280 F.2d 863, 126 USPQ 397 (CCPA 1960).

A mark that is merely descriptive, but not the common name of the goods, can nevertheless be registered on the Principal Register if it has become distinctive in terms of section 2(f). *See, e.g., In re Seats, Inc.*, 757 F.2d 274, 225 USPQ 364 (Fed.Cir. 1985). However, "[w]here it appears from the evidence that registrability of the term is precluded under sections 45 and 2, inquiry under sections 2(e) and 2(f) is not necessary." *In re G.D. Searle & Co.*, 360 F.2d 650, 656, 149 USPQ 619, 624 (CCPA 1966).

### B.

█ Whether a term is a common descriptive name is a question of fact. *Dan*

*Robbins & Assocs., Inc. v. Questor Corp.*, 599 F.2d 1009, 1014, 202 U.S.P.Q. 100, 105 (CCPA 1979). The descriptiveness of the term is determined from the viewpoint of the relevant purchasing public. *In re Abcor Development Corp.*, 588 F.2d 811, 814, 200 U.S.P.Q. 215, 218 (CCPA 1978); *In re Andes Candies Inc.*, 478 F.2d 1264, 1266, 178 U.S.P.Q. 156, 157 (CCPA 1973).

Evidence of the public's understanding of the term may be obtained from any competent source, such as consumer surveys, dictionaries, newspapers and other publications. *Dan Robbins, supra.* Both appellant and the PTO relied on evidence from these sources. We consider first the PTO's asserted *prima facie* case that BUNDT is a common descriptive name.

The Examiner cited recipe entries in four cookbooks as illustrative of the generic use of the term BUNDT. The 1963 edition of "The Good Housekeeping Cookbook" contains a recipe for CHOCOLATE–SUNDAE CAKE made in a tube pan, and a variant entitled "BUNDT–CAKE STYLE" that contains identical ingredients but is made in a "cast aluminum bundt-cake pan". The 1964 edition of "The Israeli Cook Book" contains a recipe for "BUNDT KUCHEN" made in a "greased bundt form". The 1952 edition of "The Complete American-Jewish Cookbook" contains a recipe for "KUGELHOPF OR BUNDKUCHEN (High Coffee Cake)" made in a tube pan. The 1930 (eighteenth) edition of "The Settlement Cook Book" gives two recipes for "BUNDT KUCHEN", one prepared in a tube pan, the other in a "bundt form (a round fluted pan with tube in center)".[3]

In addition, the Examiner cited four articles from the food section of The Washington Post. A 1979 article by Burton Wolf stated that "a bundt is a German coffee cake that has become so popular in America that it has its own packaged premix in supermarkets". A 1978 restaurant review by Phyllis C. Richman described the

---

**3.** For the recipes from The Settlement Cook Book see the Board's opinion, 221 USPQ at 1111–12.

rum cake sampled as a "nutted bundt cake soaked in rum syrup". Another Richman review in 1982 described a restaurant's "86–Proof Cake" as a "boozy chocolate bundt cake". A food column by Tom Neuhaus in 1982 stated that a bundt batter is no different than any other cake batter and that a bundt cake is simply a cake baked in a bundt pan.

Northland Aluminum submitted evidence in rebuttal. It submitted survey evidence that "75% to 84% of the homemakers questioned expressed an awareness of Pillsbury's BUNDT brand ring cake mix", and argues that this shows both secondary meaning under 2(f) and that BUNDT has lost any significance it may once have had as a generic name. The record also contains an affidavit by Zoe Coulson, editor of the 1973 edition of "The Good Housekeeping Cookbook", stating that since at least August 1970 it has been the policy of the Good Housekeeping Institute to recognize BUNDT as a trademark for a ring cake pan and to so indicate by capitalizing the initial letter of the mark in its cook book recipes. An affidavit by Tom Neuhaus acknowledged BUNDT as a trademark for cake pans and admitted that it was a mistake to describe "any cake that had been made in a fancy ring cake pan as being a 'bundt cake' ". There is also an affidavit from Helene Erlenborn, the caterer who made the "86-Proof Cake" described in the Richman review. Ms. Erlenborn stated that this cake was baked in a kugelhupf pan (although the recipe called for a "Bundt pan") and that she recognized the word "Bundt" as a trademark for a brand of cake pans.

The three affiants expressed familiarity with the word BUNDT as a widely-known and recognized brand name for a cake mix marketed by the Pillsbury Company. The record does not establish that these professionals in the food business are representative of the packaged cake mix consumer. *See In re Soccer Sport Supply Co., Inc.,* 507 F.2d 1400, 1403–04, 184 U.S.P.Q. 345, 348 (CCPA 1975); *Plastilite Corp. v. Kassnar Imports,* 508 F.2d 824, 827, 184 U.S.P.Q. 348, 350 (CCPA 1975).

■ The Board also criticized appellant's survey, and the Board interpreted the survey results as showing that the remaining 16% to 25% of the consumers sampled "would have recognized BUNDT as the name of a type of cake rather than the Pillsbury cake mix brand". *Id.* at 1115. Although we do not find support for the Board's reasoning on this point, we do agree with the Board that this survey does not demonstrate that the name BUNDT has lost its status as a common descriptive name. We believe the Board correctly held that appellant had not met its burden of rebutting the *prima facie* case that BUNDT is a common descriptive name.

The Board emphasized that the recipe in The Settlement Cook Book predates appellant's first use of the mark BUNDT on cake pans by at least twenty years, and that the recipes continued to appear in recent cookbooks of wide circulation. The various newspaper articles do not contradict the conclusion that BUNDT is known as the name of a type of cake, despite the retractions by some of the columnists. As the Board pointed out, "the significance of a generic term, especially in respect of foods, is clearly not restricted to the ethnic population from whose culture the term originated." *In re Northland Aluminum Products, Inc.,* 221 USPQ at 1113 (footnote omitted).

Having affirmed the Board's conclusion that BUNDT is a common descriptive name, neither obsolete nor obscure, evidence of secondary meaning can not change the result. *G.D. Searle,* 360 F.2d at 656, 149 USPQ at 624; *Cummins Engine Co.,* 359 F.2d at 865, 149 U.S.P.Q. at 561–62; *Weiss Noodle Co.,* 290 F.2d at 848, 129 U.S.P.Q. at 414.

## C.

Appellant urges us to consider its disclaimer, which appellant described somewhat expansively (since the disclaimer refers only to coffee cake), as accomplishing the result "that the registration now being solicited will not embarrass anybody's right

to make a cake, to call a cake, or indeed to label a cake which he, she or it has made as being a 'bundt' cake". *In re Northland Aluminum Products, Inc.,* 221 U.S.P.Q. at 1113.

The Board criticized the disclaimer as "meaningless" because "its effect would have been to leave no part of the mark which is registrable." *Id.* (footnote omitted). We agree with the Board that it is not of trademark significance to differentiate a cake made from a cake mix from a cake made from a recipe. Appellant argues that Pillsbury's BUNDT cake mix does not follow the traditional BUNDT KUCHEN recipe; but the Board observed that the cake is shown in the traditional bundt shape. If as appellant argues its use of the name BUNDT is not descriptive of BUNDT cake, then it is confusingly misdescriptive; in neither case is the statute complied with. *Roselux Chemical Co., Inc. v. Parsons Ammonia Co., Inc.,* 299 F.2d 855, 863, 132 U.S.P.Q. 627, 634 (CCPA 1962) (immaterial that some of the so-called SUDSY ammonia products were not sudsy because they contained no detergent).

The Board also correctly found that the form of the lettering of the mark is "not so distinctive as to create a commercial impression separate and apart from the term BUNDT". *In re Northland Aluminum Products, Inc.,* 221 USPQ at 1113 n. 9. The record is devoid of evidence of public recognition of this overall format as a trademark. *G.D. Searle,* 360 F.2d at 655–56, 149 U.S.P.Q. at 623.

On the totality of the evidence, we affirm the Board's decision that BUNDT is a common descriptive name for a type of ring cake, and is not registrable as a trademark for "ring cake mix".

AFFIRMED.