> **THIS OPINION IS A**
> **PRECEDENT OF THE TTAB**

Oral Hearing: October 18, 2007          Mailed: March 24, 2008

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Hotels.com, L.P.
_____

Serial No. 78277681
_____

Gary D. Krugman, Kevin G. Smith and Jody H. Drake of Sughrue Mion, PLLC for Hotels.com, L.P.

Tarah Hardy Ludlow, Trademark Examining Attorney, Law Office 110 (Chris A. F. Pedersen, Managing Attorney).
_____

Before Walters, Holtzman and Rogers, Administrative Trademark Judges.

Opinion by Holtzman, Administrative Trademark Judge:

Applicant, Hotels.com, L.P., filed an application to register the mark HOTELS.COM (in typed form) on the Principal Register for services ultimately identified as:[1]

---

[1] Application Serial No. 78277681; filed July 23, 2003; alleging a date of first use and first use in commerce on March 25, 2002. Applicant amended the application on August 4, 2004 to allege a date of first use anywhere and in commerce in a different form (HOTEL.COM) in 1997. The application includes a claim of ownership of Registration Nos. 2918738 and 2793744. Registration No. 2918738 is for the mark HOTELS.COM (and design) for "providing information for others about transportation; travel agency services, namely, making reservations and bookings for transportation for others by means of telephone and the global computer network" in Class 39. This mark is registered on the Principal Register without a disclaimer or a Section 2(f) claim. Registration No. 2793744 is for the mark 1 800 USA HOTELS.COM (in

providing information for others about temporary lodging; travel agency services, namely, making reservations and bookings for temporary lodging for others by means of telephone and the global computer network, in Class 43.

The trademark examining attorney refused registration under Section 2(e)(1) of the Trademark Act on the ground that the mark is merely descriptive of the services, that applicant's evidence of acquired distinctiveness under Section 2(f) of the Act is insufficient, and that the mark is generic and incapable of registration under Section 2(f).[2] Applicant has appealed from the refusal.

*Prior Board decision*

At the outset, we note that the issues in this case were the subject of a prior Board proceeding in related application Serial No. 76414272. That case involved the same applicant, the same term, HOTELS.COM, and the same services as those herein.

---

typed form) for "discount travel agency services, namely, making reservations and bookings for transportation" in Class 39; and "discount travel agency services, namely, making reservations and booking for temporary lodging" in Class 43. This mark is registered on the Principal Register under Section 2(f) of the Act.

[2] The application also originally included services in Class 39, "providing information for others about transportation; travel agency services, namely, making reservations and bookings for transportation for others by means of telephone and the global computer network." At applicant's request, and because the refusal on the basis of genericness only applied to Class 43, Class 39 was divided out of this application. That application subsequently issued into Registration No. 3015723 on the Principal Register with a claim of acquired distinctiveness under Section 2(f).

Serial No. 78277681

Proceedings in the present appeal were suspended on July 26, 2005 at applicant's request pending the outcome of the earlier case.

In that case, applicant sought to register the composite mark shown below on the Principal Register for the same services in Class 43.[3]

In a decision issued September 11, 2006 ("HOTELS.COM I") (reconsideration denied, October 24, 2006, "HOTELS.COM I Recon."), the Board affirmed the examining attorney's requirement for a disclaimer of HOTELS.COM under Section 6(a) of the Trademark Act finding that the composite mark was not unitary and that the term HOTELS.COM was generic.  However, the Board alternatively held that if the term was ultimately found not to be generic, applicant's evidence was sufficient to support a claim of acquired distinctiveness under Section 2(f), and the Board accordingly reversed the examining attorney's refusal to accept this evidence.  Copies of the decisions are attached.

---

[3] As in the present application, the earlier application also initially included Class 39.  That class was divided out of the application and the application ultimately issued into Registration No. 2918738 under Section 2(f) on the Principal Register.

3

Serial No. 78277681

Applicant did not appeal the Board's decision in that case. Instead, as permitted by the Board, applicant submitted the required disclaimer of HOTELS.COM, and the decision was accordingly set aside. The application subsequently issued as Registration No. 3337609 on the Principal Register with a disclaimer of HOTELS.COM.[4]

In view of the adverse decision in the prior case, and during suspension of the present appeal, applicant commissioned a survey to determine the significance to the public of the term HOTELS.COM. After the survey was completed, applicant requested remand of the application to the examining attorney for reconsideration of the refusal in light of this new evidence. When the examining attorney rejected the survey evidence as unpersuasive, the appeal in this case was resumed. Briefs were then filed in this case and an oral hearing was held.

### Res Judicata

The examining attorney argues in her brief that in view of the prior Board proceeding involving the same applicant and, as applicant admits, the same issues, the claim presented in this appeal, i.e., that HOTELS.COM is not generic and may be registered on a showing of acquired distinctiveness, is barred by res judicata. We note that the two applications were handled

---

[4] It appears that the registration has mistakenly issued with a Section 2(f) claim.

4

by different examining attorneys, but the evidence of genericness, if not the same, is essentially of the same type and substance. Also, apart from the newly submitted survey evidence, applicant's evidence in rebuttal to the examining attorney's prima facie case[5] and in support of its claim of acquired distinctiveness is essentially the same.

The examining attorney contends that all questions of fact and law have been determined and that no conditions have changed since the previous ruling. Applicant argues that the res judicata argument is untimely, having been raised for the first time in the examining attorney's brief when, as applicant points out, it could have been raised at the time of the examining attorney's denial of applicant's (second) request for reconsideration.

Apart from the question of whether the res judicata argument was timely raised by the examining attorney, we find that the principles of the doctrine do not apply in this case. It is generally held that an applicant is not precluded by an adverse judicial determination of its right to registration in an ex parte proceeding from seeking registration in a second application if the applicant can show that facts or circumstances have changed since the rendering of the adverse

---

[5] Notwithstanding the prior decision, applicant maintains in the present appeal that the examining attorney has not met her initial burden of showing that the mark is generic.

5

final decision in the first application.  See, for example, In re Honeywell Inc., 8 USPQ2d 1600 (TTAB 1988); and In re Oscar Meyer & Co., Inc., 171 USPQ 571 (TTAB 1971).  See also In re Bose Corp., 476 F.3d 1331, 81 USPQ2d 1748 (Fed. Cir. 2007) citing Mayer/Berkshire Corp. v. Berkshire Fashions, Inc., 424 F.3d 1229, 76 USPQ2d 1310, 1314 (Fed. Cir. 2005) ("We have warned that particular 'caution is warranted in the application of preclusion by the PTO, for the purposes of administrative trademark procedures include protecting both the consumer public and the purveyors.'").

Under the circumstances, and in an exercise of caution, we find that the survey evidence constitutes a change in facts sufficient to avoid application of the doctrine of res judicata and to justify re-examining applicant's claim that the term HOTELS.COM is not generic.  See, e.g., In re Johanna Farms Inc., 8 USPQ2d 1408, 1411 (TTAB 1988) (prior Board decision finding LA YOGURT for yogurt incapable of distinguishing source did not preclude registration of LA YOGURT under the doctrine of stare decisis;[6] application of the doctrine "would be inappropriate in view of the prima facie showing by applicant of changed facts and/or circumstances" based on newly submitted evidence of consumer letters and a survey dealing with purchaser perception

---

[6] In the context of this ex parte proceeding, we consider a res judicata argument to be equivalent to a stare decisis argument.

of LA YOGURT).  The probative value of the survey evidence in this case will be weighed along with all the other evidence of record.

We turn then to a consideration of the present appeal.  To the extent the evidence is the same in this case as it was in the prior case, we follow this panel's reasoning and findings as to that evidence, and where applicable, we will cite to the decisions as *Hotels.com I* or *Hotels.com I Recon.*, as appropriate.  We will make separate findings as to the evidence that differs.  Our ultimate determination, however, will be based on the record before us as a whole.

*Procedural Matter*

The examining attorney attached a number of dictionary entries from online sources to her appeal brief and requested that the Board take judicial notice of this evidence.  (Brief at 8.)  Applicant has objected to this evidence as untimely.

The Board may take judicial notice of dictionaries, including online dictionaries, which exist in printed format. See In re CyberFinancial.Net Inc., 65 USPQ2d 1789, 1791 n.3 (TTAB 2002).  See also University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co., 213 USPQ 594 (TTAB 1982), aff'd, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).  From our review of the attachments, only one of the resources clearly meets that requirement, namely <u>The American Heritage Dictionary of the</u>

English Language (Fourth Edition, 2000), with entries for "hotel" and ".com," retrieved from the bartleby.com website. We take judicial notice of this resource. As to the remaining entries, applicant's objection is well taken and such evidence has not been considered.

*Issue on appeal*

Applicant states in its brief that it does not dispute the descriptiveness refusal, but believes that the record supports its position that the mark has acquired distinctiveness under Section 2(f) of the Act. (Brief at 1, footnote 1; Reply Brief at 2.) While maintaining that the mark is generic and that no amount of 2(f) evidence can rescue it, as a result of the prior decision the examining attorney, in her brief, has essentially withdrawn the refusal to accept applicant's evidence of acquired distinctiveness if it is ultimately determined that the mark is not generic. (Brief at 6.) Thus, the sole issue on appeal is whether the mark is generic.

*Genericness*

The test for determining whether a mark is generic involves a two-step inquiry. First, what is the genus (category or class) of goods or services at issue? Second, is the term sought to be registered understood by the relevant public primarily to refer to that genus (category or class) of goods or services? See In re Reed Elsevier Properties Inc., 482 F.3d

1376, 82 USPQ2d 1378, 1380 (Fed. Cir. 2007) (quoting H. Marvin Ginn Corporation v. International Association of Fire Chiefs, Inc., 782 F.2d 987, 228 USPQ 528, 530 (Fed. Cir. 1986)).

The Office has the burden of proving genericness by "clear evidence" of the public's understanding thereof. In re Merrill Lynch, Pierce, Fenner & Smith, Inc., 828 F.2d 1567, 4 USPQ2d 1141, 1143 (Fed. Cir. 1987).

### 1. The genus of applicant's services and the relevant public for the services

As determined in the prior decision, and as set forth in applicant's brief, the genus of services is the wording used in the recitation, "providing information for others about temporary lodging; travel agency services, namely, making reservations and bookings for temporary lodging for others by means of telephone and the global computer network." Applicant's Brief at 9; *Hotels.com I* at 22-23.

The Board found in the prior case, and there is no dispute here, that the relevant public for applicant's services consists of "all customary consumers of the services, including those who would need information on hotels and other forms of temporary lodging, or would need to book or make reservations for the same, for business or leisure needs, as an alternative residence during construction or renovation of a primary residence, for

conferences or special events, or for any other reason."
*Hotels.com I* at 23.

 *2. The meaning of HOTELS.COM to the relevant public*

Evidence of the relevant public's understanding of a term may be obtained from any competent source including consumer surveys, dictionary definitions, newspapers and other publications. See Reed Elsevier Properties Inc., supra at 1380; and In re Northland Aluminum Products, Inc., 777 F.2d 1556, 227 USPQ 961, 963 (Fed. Cir. 1985). We have considered all the evidence of record bearing on purchaser perception of HOTELS.COM, including the evidence applicant has submitted in support of its claim of acquired distinctiveness. See In re Recorded Books Inc., 42 USPQ2d 1275 (TTAB 1997); and In re The Paint Products Co., 8 USPQ2d 1863 (TTAB 1988).

The examining attorney has submitted listings from <u>The American Heritage Dictionary of the English Language</u> (Third Edition 1992 and Fourth edition 2000) defining "hotel" as "An establishment that provides **lodging** and usually meals and other services for travelers and other paying guests." (Emphasis added.) The genus of applicant's services involves information about temporary lodging and making reservations for temporary lodging. There is no question, and moreover the evidence submitted by the examining attorney shows, that "temporary lodging" is the equivalent of or includes "hotels." See, for

example, the website printouts from www.wa.gov ("Hotels and Lodging ... National Industry at a Glance..."), stating that "Hotels and other lodging are homes away from home for business travelers and vacationers, offering both temporary lodging and relief from housekeeping chores back home ..."; and www.austin.about.com, referring to "Austin Hotels, B&Bs, Resorts and Other Temporary Lodging."

Also of record are printouts of various pages from applicant's website, www.hotels.com, and advertisements promoting both applicant's website and the services available on that website. The website's home page includes a tab for linking to "Hotels," to search for lodging information and/or to book a reservation, with additional tabs to search for hotel information "by city" or "by amenity" or "by address." Applicant's print advertisements directing the public to its website variously state: "Book online at www.hotels.com"; "hotels.com enables you to quickly and efficiently compare accommodations by: price, quality, Location...Amenities, Availability..."; and "Use this coupon and save on your next hotel reservation with hotels.com." The examining attorney also points to one of the questions asked in an online market survey that visitors to applicant's website were asked to complete: "Please list any travel or hotel sites other than hotels.com, which you frequent."

11

It is clear from applicant's website and other promotional materials that "hotels" are the focus, or a key focus, of the information about temporary lodging and reservations for temporary lodging that applicant provides on its website. Because the term HOTELS names a key aspect of applicant's services, i.e., that aspect of applicant's information services and reservation services that deal with hotels, the term is generic, at least for those aspects of applicant's services.

The term HOTELS.COM is no more registrable than the generic word "hotels," alone.  The examining attorney has submitted an entry from The American Heritage Dictionary of the English Language (Fourth Edition 2000) defining ".com" as "ABBREVIATION: commercial organization (in Internet addresses)."  We also take judicial notice of the following definition of "TLD" as "(Top-Level-Domain) The highest level domain category in the Internet domain naming system.  There are two types: the **generic** top-level domains, such as .com, .org, and .net... ."  McGraw Hill Computer Desktop Encyclopedia (9th ed. 2001) (emphasis added).  The term ".COM," in itself, has no source-indicating significance.  Rather, it signifies that the user of the domain name is a commercial entity, and that the goods or services offered by the entity involve use of the Internet.  See In re Oppedahl & Larson LLP, 373 F.3d 1171, 71 USPQ2d 1370 (Fed. Cir. 2004).

Furthermore, there is nothing in the combination of HOTELS and .COM that results in any new or incongruous meaning, or a different commercial impression. While there is no bright-line rule that appending a top-level domain name such as ".com" to an otherwise generic term will never affect registrability (see *Oppedahl*, supra), in this case it does not. Each of the terms HOTELS and .COM has a clear and readily understood meaning and the combined term communicates just as clearly and directly that applicant operates a commercial website that provides its customers with information about hotels. The Federal Circuit has held that "the PTO has satisfied its evidentiary burden [on genericness] if...it produces evidence including dictionary definitions that the separate words joined to form a compound have a meaning identical to the meaning common usage would ascribe to those words as a compound." In re Gould Paper Corp., 834 F.2d 1017, 5 USPQ2d 1110, 1111 (Fed. Cir. 1987).

The examining attorney has also made of record printouts of Google search summaries, together with printouts from some associated websites.[7] It can be seen from the web pages and even from the more abbreviated excerpts in the search summaries that the term "hotel.com" or "hotels.com" is frequently used as part

---

[7] Although some of the websites are referenced only in summary format, we find that there is ample information in the summary to understand the context of usage. Cf. In re Fitch IBCA Inc., 64 USPQ2d 1058, 1060 (TTAB 2002) ("probative value of search engine summary results...will vary depending upon the facts of a particular case.").

of the domain names of others to denote websites that provide

hotel information and/or hotel reservation services, i.e., the

services provided by applicant's website.  Examples of these

websites are shown below:

> <u>Hotels, travel, discount hotels - reservations and lodgings</u>
> Hotels and hotel reservations by All-Hotels, travel,
> lodgings and discount hotels worldwide.  Instant
> reservations at 10000 hotels in 10000 locations. ...
> All-Hotels is one of the largest online hotel reservation
> companies - we have every kind of lodging...all over the
> world! [Printed at bottom of web page.]
> **www.all-hotels.com**

> <u>hotel reservations and bookings</u>
> ...Web-Hotels.com - Travel and Hotel Reservations.  Hotel
> booking for all major worldwide cities and travel
> destinations. ... [The web page also includes tabs to
> search for "value rates" and "premiere hotels."]
> **www.web-hotels.com**

> <u>My-Discount-hotels.com</u>
> ...
> My-discount-hotels.com is one of the most active online
> discount hotel reservation websites. ... My-discount-
> hotels.com is one of the most visited hotel information
> sites on the internet.
> **www.my-discount-hotels.com**

> Hotel Reservation Site
> Free - compare rates and prices for hotel reservation
> sites. ...
> **www.123-hotels.com**

Additional examples of such usage include

**www.choicehotel.com** ("...Book and Save now with Best Choice e-

rate Guarantee"); and **www.dealsonhotels.com** ("Find a Lower Rate,

We'll Beat It!  Low Internet Hotel Rates Guaranteed").[8]

It is clear from the website and promotional materials of applicant as well as the websites of third-parties that consumers who are interested in finding information about hotels or making reservations at hotels, would immediately understand that HOTELS.COM identifies a website that provides such services.  Cf. Reed Elsevier Properties Inc., supra at 1381 (affirming the Board's finding that LAWYERS.COM is generic for online information exchange in the fields of law, legal news, and legal services, the Court noted that third-party websites are competent sources to determine what the relevant public would understand LAWYERS.COM to mean and provide substantial evidence to support the Board's decision).  In addition, this evidence demonstrates a competitive need for others to use as part of their own domain names and trademarks, the term that applicant is attempting to register.

HOTELS.COM is properly considered a compound word for purposes of the genericness analysis rather than a phrase, as the two terms appear without any space or separation between them.  See In re Gould, supra; and, e.g., In re

---

[8] There are also a number of websites for hotel information or hotel reservations that include the term "hotel" somewhere in the name, including www.hotelstravel.com ("Containing over 75000 links to hotels, discount hotels and travel-related services, the most complete, comprehensive and up-to-date hotel directory on the web...."); and www.hotelres.com ("Online hotel reservations, discounted rates, best value rating system and objective hotel information for hotels in San Francisco.").

CyberFinancial.Net Inc., supra. Compare In re American Fertility Society, 188 F.3d 1341, 51 USPQ2d 1832 (Fed. Cir. 1999). However, even if HOTELS.COM were viewed as a phrase, under the analysis required by *American Fertility*, we would still find it generic. The evidence showing use of domain names incorporating "hotel.com" or "hotels.com" by others in the field to refer to the same types of services as those defined in the application reflects a clear understanding of the phrase HOTELS.COM, as a whole, as it relates to the genus of applicant's services. See *Marvin Ginn*, supra at 530. (the "critical issue in genericness cases is whether members of the relevant public primarily use or understand the term sought to be protected to refer to the genus of goods or services in question."). Compare *American Fertility*, supra at 1837 ("The PTO here failed to provide any evidence that the phrase as a whole, SOCIETY FOR REPRODUCTIVE MEDICINE, has acquired no additional meaning to the relevant public than the terms 'society' and 'reproductive medicine' have individually.")

Furthermore, it can be seen from some of the above excerpts, i.e., www.all-hotels.com, www.my-discount-hotels.com, and www.123-hotels.com, that websites providing information about hotels and reservations for hotels, are referred to as "hotel information sites" and "hotel reservation sites." See also, for example, www.hotres.com ("In contrast to other hotel

reservation websites, you can complete an entire reservation with HOTRES.com..."); and www.phi-phi.com ("Unlike many hotel reservation websites, phi-phi.com only requires your credit card details after you have received your Reservation Confirmation"). In addition, the website, www.travelscience.com, provides links to other "hotel information and reservation sites" such as hotelrooms.com ("This is one of the best hotel sites we have found.  They have a...terrific hotel search engine..."); and hotelstravel.com ("This site has over 75,000 links to a worldwide selection of hotels...."). Similarly, the website www.travel-channel.us provides "Lodging and Hotel Information Sites" and "Best Hotel Information Sites" ("Our websites offer the information you need for planning the perfect family vacations...").

It is clear from this evidence that "hotel information site" or "hotel reservation site" identifies a particular type of website.  The genus of applicant's services, which is defined as providing information about temporary lodging and making reservations at temporary lodging, logically includes the type of website known as a "hotel information site" or a "hotel reservation site."  Thus, HOTELS.COM is generic for an additional reason.  It not only identifies a central focus of applicant's services, as discussed earlier, but it also identifies at least one category of the services themselves,

17

i.e., that applicant provides a hotel information website and a hotel reservation website. "So long as [the mark] is generic for one of the recited services, it must be refused registration. It need not be shown to be generic for each of the recited services." In re Eddie Z's Blinds and Drapery Inc., 74 USPQ2d 1037, 1042 (TTAB 2005). It is also clear from this evidence that domain names incorporating "hotel.com" or "hotels.com" are used by others to identify such websites. Consumers would see HOTELS.COM and they would immediately recognize it as a term that denotes a hotel information website and/or a hotel reservation website.

Applicant argues essentially that HOTELS.COM is not generic because applicant is not providing a "hotel" service as it does not provide lodging and meals for its users; and that based on definitions for "agency"; "hotel"; "reservation" and "reserve" from Random House Webster's College Thesaurus the term "hotel" is not a synonym for any of those terms. (Response dated August 4, 2004 at 4.)

The Federal Circuit rejected a similar argument by the applicant in Reed Elsevier Properties Inc., supra. In that case, as noted earlier, LAWYERS.COM was found to be generic for online information exchange in the fields of law, legal news, and legal services. Although applicant argued that it was not seeking to register its mark for selling lawyers or offering

services of lawyers, the Court found that the Board properly concluded that "a central and inextricably intertwined element of [the claimed] genus is information about lawyers and information from lawyers."  Reed Elsevier Properties Inc., supra at 1380.  Similarly, in the present case, "hotels" identifies the central focus of the information and reservation services provided on applicant's website, and thus the term HOTELS.COM, consisting of nothing more than a term that names that central focus of the services, is generic for the services themselves.  See also, for example, In re DNI Holdings Ltd., 77 USPQ2d 1435, 1441 (TTAB 2005) (SPORTSBETTING.COM generic for, inter alia, provision of information regarding sports and betting, finding that "the information piece of applicant's recited services is inextricably tied into the actual betting."); and In re CyberFinancial.Net Inc., supra (BONDS.COM generic for Internet information services and electronic commerce services which are directed, in part, to bonds, the products which comprise the subject matter of applicant's services).

Further, as to this point, this panel noted in the prior decision that In re Seats, Inc., 757 F.2d 274, 225 USPQ 364 (Fed. Cir. 1985) was distinguishable from the prior case; and we again find it distinguishable from the present case.  The *Seats* case involved an application to register SEATS as a mark for "ticket reservation and issuing services for various events by

19

means of a computer," and the Federal Circuit stated:  "The term 'seats' may be generic in relation to chairs or couches or bleachers.  It is clearly not generic to reservations services. Contrary to the Board's statements Seats is not selling seats, as would for example a furniture merchant, but is selling a reservation service... ."  Id. at 367-68.  However, as this panel explained in the prior case:

> Just as Seats, Inc. was not selling seats, applicant here is not selling hotels, or even providing hotel services, but it is there that the similarity with the *Seats* case ends.  Though the Federal Circuit noted the Board's concern with "a need of others to use SEATS in describing the present services," there is no indication in the Seats decision that the Board actually had before it evidence of use of the term by other purveyors of ticket reservation and issuance services.  In contrast, the record in this case evidences use of "hotel.com" and "hotels.com" as part of the domain names of third-party web sites; and those web sites appear to provide information to prospective users of hotels that is the same as or very similar to that provided by applicant's web site.  In short, this case does not involve a perceived need for others to use a term, but involves a demonstrated use of the term by others.  The relevant public will, therefore, perceive use of "hotels.com" as indicating a web site focused on hotels and, specifically, providing information about hotels and the possibility of reserving a hotel room.

*Hotels.com I* at 31-32.

This case is also distinguishable from In re Dial-A-Mattress Operating Corp., 240 F.3d 1341, 57 USPQ2d 1807 (Fed. Cir. 2001).  In that case the Federal Circuit reversed the Board's holding affirming the genericness refusal to register 1-888-MATRESS as a mark for "telephone shop-at-home services in

the field of mattresses." We recognize that there are similarities between a telephone number and a domain name in that each typically can be used by only one entity at a time. However, as explained in In re Martin Container, Inc., 65 USPQ2d 1058 (TTAB June 11, 2002) and In re CyberFinancial.Net, supra, although telephone numbers are unique, i.e., a given ten-digit number can be used by only one entity at a time, domain names may be up to sixty-three numbers or characters (plus the characters used to identify the TLD), so that many domain names could contain the same root terms (such as "hotels.com"), combining them with different numbers or letters as prefixes and/or suffixes.

We find here, as in the prior case, that the examining attorney has met her burden of establishing, prima facie, that the primary meaning of HOTELS.COM is generic for the involved services. In addition, we find that applicant's evidence does not rebut this showing of genericness.

In support of applicant's contention that HOTELS.COM is not generic, applicant has submitted printouts of a number of third-party registrations for marks that include either the word HOTEL(S) or the term .COM, and in a few instances, marks that include both terms. Applicant argues that the USPTO has permitted marks allegedly similar to applicant's mark to register either on the Supplemental Register or on the Principal

21

Register, with or in some cases without a showing of acquired distinctiveness.

For the most part, these marks are readily distinguishable from the mark herein and they do not compel a finding that applicant's mark is not generic. In any event, regardless of what these third-party registrations may show, and even to the extent the marks in these registrations "have some characteristics similar" to the mark herein, as the Federal Circuit has stated, "the PTO's allowance of such prior registrations does not bind the Board or this court." In re Nett Designs Inc., 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001). It is well settled that each case must be decided on its own facts, based on the particular mark, the particular goods or services, and the particular record in each application. Accordingly, there is "little persuasive value in the registrations" applicant has submitted. Id. Nor do these third-party registrations establish that there is an Office practice holding such marks are generally registrable. See In re First Draft, Inc., 76 USPQ2d 1183 (TTAB 2005).

Applicant also argues that applicant's evidence demonstrates that HOTELS.COM is perceived as a non-generic brand name by a large majority of the relevant class of purchasers for applicant's services. To support this contention, applicant made of record in this case, as it did in the prior case, 64

22

declarations, identifying the declarants as "Applicant's customers, vendors, competitors and others in the field." (Brief at 9.) Applicant maintains that this evidence shows both acquired distinctiveness of HOTELS.COM and that the term is not generic. This evidence was thoroughly considered and discussed by this panel in the prior decision, and without repeating the findings of the prior decision, we adopt them here. See, generally, *Hotels.com I Recon.* Further, we adhere to this panel's conclusion in the prior case that the declarations are not entitled to significant probative value in determining how the relevant public perceives the term "hotels.com." Id at 10.

We have also considered applicant's other evidence of acquired distinctiveness in determining the relevant public's perception of the mark. Applicant has submitted the declaration of Elizabeth Hart, a (now former) paralegal of applicant's counsel, introducing evidence of use of the essentially equivalent HOTEL.COM mark since 1997. Applicant has also submitted the declaration of Linda Essary, applicant's compliance manager, attesting to applicant's substantial revenues and advertising expenditures, and introducing examples of print and other forms of advertisements and other evidence of extensive public exposure of HOTELS.COM. However, evidence of even significant promotion, use and sales cannot transform a generic term into a trademark. See Roux Laboratories, Inc. v.

23

Clairol Inc., 427 F.2d 823, 166 USPQ 34, 39 (CCPA 1970) ("mere advertising or other evidence of supposed secondary meaning cannot convert something unregistrable by reason of its being the common descriptive name or generic name for the goods - the antithesis of a trademark - into a registrable mark"); and In re Northland Aluminum Prods., Inc., 777 F.2d 1556, 227 USPQ 961, 964 (Fed. Cir. 1985) (BUNDT common descriptive name for type of cake and evidence of de facto secondary meaning cannot change that result).  See also *Hotels.com I* at 32, 35.

Also attached to the Essary declaration is the online market study mentioned earlier which was conducted on applicant's hotels.com website.  While the study may demonstrate consumers' favorable view of the website, the services provided on the website and various advertisements relating to the website, the study does not, as applicant claims, evidence consumer perception or recognition of HOTELS.COM as a mark.

We turn finally to applicant's survey.  This was a national probability double blind telephone survey conducted by Thomas D. Dupont, Ph.D. using a "Teflon" format.[9]  The survey sample consisted of 277 males and females age 18 and over who have stayed at a hotel or motel in the past 12 months or plan to in

---

[9] Applicant describes the survey as a "'Teflon' type" survey.  This refers to the format of the survey used in E.I. duPont De Nemours & Co. v. Yoshida International, Inc., 393 F.Supp. 502, 185 USPQ 597 (E.D.N.Y. 1975) to prove that "Teflon" was not generic.

the next 12 months. (Survey report at 2 and 6.)  The stated objective of the survey was to determine whether consumers perceive HOTELS.COM as a brand name or as a generic (common) name for the services.

Respondents were first told the difference between a brand name and a common name using three examples, as illustrated by the following: "For a business that sells gasoline, SHELL would be a brand name and SERVICE STATION would be a common name." The respondents were then tested for their understanding of the concepts by asking two additional questions, one of which was: "For a business that sells HAIRCUTS, would you say BARBER SHOP is a BRAND NAME or a COMMON NAME?"  The 27 respondents who did not answer both questions correctly were eliminated from the survey.

The remaining 250 respondents were asked a series of questions presented in a standard format and in "randomized order" about the names of eight retail businesses, including HOTELS.COM.  The following are representative of the questions presented:

> For a business that sells FLOWERS, would you say FLORIST is a BRAND NAME or a COMMON NAME?

> For a business that makes HOTEL RESERVATIONS AND PROVIDES INFORMATION ABOUT HOTELS, would you say HOTELS DOT COM is a BRAND NAME or a COMMON NAME?

Serial No. 78277681

The results of the survey are displayed in "Table 1" below.

**Table 1**

**Perceptions of Whether Name is Brand Name Or Common Name**
**(Base = 250 Respondents)**

|  | Brand % | Common % | Other % | Don't Know % |
|---|---|---|---|---|
| TOYS R US | 95 | 4 | - | 1 |
| DAIRY QUEEN | 92 | 6 | * | 1 |
| AMAZON.COM | 87 | 8 | - | 4 |
| HOTELS.COM | 76 | 20 | - | 4 |
| SEARCH ENGINE | 15 | 74 | - | 11 |
| NAIL SALON | 11 | 84 | - | 5 |
| FLORIST | 6 | 93 | - | 1 |

* Less than 0.5%

As can be seen in the table, 76% of the respondents answered that HOTELS.COM is a brand name. While that figure seems impressive on its face, we find that the survey is so seriously flawed that the results cannot be given any weight.

To begin with, there was a critical omission in the screening process and the result is that the universe for the survey is fatally overbroad. Dr. Dupont screened for respondents' understanding of the difference in concept between a brand name and a generic name. However, the term involved in this case also happens to be a domain name. Although we can assume that consumers will recognize HOTELS.COM as a domain name, we cannot assume that they understand the conceptual

26

difference between a domain name and a brand name, or even recognize that there is a difference.  Many consumers may automatically equate a domain name with a brand name, believing they both serve the same function.  Thus, Dr. Dupont should have ascertained through the screening process, rather than assumed, that participants in the survey could distinguish the two concepts; and those who could not make the distinction should have been eliminated from the sample.  As it stands, this universe of respondents could have viewed any ".com" name, regardless of the nature of the term preceding it as a so-called brand name, thereby radically skewing the results of the survey in applicant's favor.

At a minimum, the respondents should have been presented with sample names that had some relevance to the mark in this case.  Except for the term AMAZON.COM, which involves a compound term created by joining an arbitrary term and a TLD, the sample names have no connection to the type of mark at issue. Furthermore, the name AMAZON.COM is too obvious an example of a ".com" domain name that also functions as a brand name.  The survey should have tested for respondent understanding of various types of compound terms using ".com," including compounds utilizing a generic term and ".com."  Then results showing recognition of such terms as generic would have made the 76% who recognized HOTELS.COM as a brand name meaningful.

Finally, we note that the survey report states that the questions were asked in randomized order. This was apparently accomplished by a computer, but there is no indication of whether or how frequently the HOTELS.COM mark was immediately preceded by the well recognized example of a ".com" brand name, AMAZON.COM. If HOTELS.COM was preceded in the line-up of questions by this name, it could have led or misled respondents into automatically assuming that they should consider HOTELS.COM a brand name as well.

In light of the noted deficiencies in the survey, we find that it is entitled to no probative weight as to public perception of HOTELS.COM.

While we acknowledge, as applicant points out, that any doubt on the question of genericness must resolved in favor of publishing the mark for opposition, we disagree with applicant that its evidence is sufficient to raise any such doubt about the genericness of HOTELS.COM. For the reasons set forth in the prior Board decisions, and for the additional reasons expressed herein, we find that HOTELS.COM is generic, and that the record in this case does not dictate a different result.

### *Acquired distinctiveness*

Although we have determined that HOTELS.COM is generic, as mentioned earlier, if applicant should ultimately prevail in any appeal of this decision, we find in the alternative that the

28

Serial No. 78277681

evidence of acquired distinctiveness is sufficient to support

registration under Section 2(f).


   **Decision:** The refusal to register under Section 2(e)(1) is

affirmed.



HOTEL-I.pdf



HOTEL-recon
.pdf